**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VANESSA LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 5051 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This Opinion revisits plaintiff's counsel's petition for an award of attorney's fees pursuant to 42 U.S.C. §406(b)(1)(a). Normally, this should be an uncomplicated and straightforward matter. This is one of those times when, unfortunately, it is not.

As discussed in the previous Order, [Dkt. #58], Mr. Rose filed the petition on March 15, 2017, more than two years after the Commissioner sent out the Notice of Change in Benefits on November 22, 2014. In his petition, counsel claimed the first he heard of the Commissioner's decision was in a notice dated November 23, 2016. This notice was sent to him as counsel of record, and the Commissioner has submitted a copy of the notice sent to him on November 22, 2014. The notice was sent to Mr. Rose's office address at 799 Roosevelt Road in Glen Ellyn, Illinois. [Dkt. #59-2]. Mr. Rose claims that he never received the notice because he "had previously closed his office at the said location and had begun using a post office box" as his address. [Dkt. #60, Page 2 ¶3]. Significantly, he doesn't say when he moved. As we shall see, the point is important, and the

---

[1] Pursuant to Federal Rules of Civil Procedure 25(d), we have substituted Nancy A. Berryhill for Carolyn W. Colvin as the appellee.

omission significant.

A search of court electronic filing records shows that as recently as January 31, 2016, Mr. Rose was consistently filing cases and appearances listing 799 Roosevelt Road as his address and had been doing so for about fourteen months after he now claims he closed his office. *See Abbott v. Colvin*, No. 16-1811, Dkt. # 1 (complaint); *Lattanzio v. Colvin*, 15-11868, Dkt. #1 (complaint), #3 (appearance); *Shoffner v. Colvin*, No. 15-9187, Dkt #1 (complaint), #3 (appearance); *Herwalt v. Colvin*, No. 15-9012, Dkt. #1 (complaint), #3 (appearance); *Stanic v. Colvin*, No. 15-8425, Dkt. #1 (complaint), #3 (appearance); *Filipos v. Colvin*, No. 15-7719, Dkt. #1 (complaint), #3 (appearance); *Colangelo v. Colvin*, No. 15-6777, Dkt. #1 (complaint), #4 (appearance); *Guest v. Colvin*, No. 15-2843, Dkt. #1 (complaint), #3 (appearance); *McWilliams v. Colvin*, No. 15-1588, Dkt. #1 (complaint); #3(appearance); *Ryan v. Colvin*, No. 14-10282, Dkt. #1 (complaint), #3 (appearance); *Tapia v. Colvin*, No. 14-10170, Dkt. #3 (complaint), Dkt. #4 (appearance).

As every one of those cases was initiated after November 2014, counsel is either manufacturing the excuse of closing his office prior to the notice sent to him or is so lackadaisical as to file over a year's worth of documents in federal court – in clear violation of the rules – without noting his purportedly new address and continuing to use his "old" one. Common sense and human experience – which always have a role to play in the solution of legal problems, *cf. United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *United States v. Reichling,* 781 F.3d 883 (7th Cir. 2015); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir.2009); *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 743 (1st Cir. 1995); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.); Posner, How Judges Think, 116 (Harvard University Press 2008) – counsel against blind acceptance of Mr. Rose's "explanation [which is] contrary to common sense and experience." *United States v. Ali*, 952 F.2d 405 (7th Cir. 1992).

But there is even a clearer case of misrepresentation here. As already noted, counsel originally claimed that he first learned of the administrative resolution of plaintiff's case in November 2016 – by way of the November 23, 2016 notice. [Dkt. #56, at 2 ("Counsel received this information toward the end of November, 2016.")]. Confronted with not only the November 2014 notice, but a *second* notice dated August 16, 2016 [Dkt. #59-3], counsel was forced to admit in his reply brief that he lied to the court about not receiving *any* notice until November of 2016. He claimed he "did not act on that [August 2016] document because his experience told him to wait for a second notice which [he says] frequently revised the relevant information provided by the first notice." [Dkt. #60, ¶5]. Whatever counsel's experience in that regard might be, it does not account for or justify representing to the court that he received no notice until November 2016. There are many ways to deal with what are perceived to be impediments in the judicial system. Lying is not one of them. *Cf. Bryson v. United States*, 396 U.S. 64, 72 (1969).

Counsel not only dallied in filing his fee petition, he dallied this entire proceeding – repeatedly. When counsel delays in pursuing a case, the back benefits eventually found to be due the plaintiff accumulate. But as the Supreme Court said in *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002), "[i]f the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court." And a plaintiff suffers needlessly when his lawyer does not take appropriate action to see that the award is promptly distributed. The Commissioner explains that, due to the administrative niceties of this case, that accumulation was not terribly significant. That may be so when measured against the Commission's total obligations. But under that test, any impropriety or delay would automatically be excused. That cannot be.

3

Mr. Rose needed a total of sixteen months to file his memorandum in support of his motion for reversal of the Commissioner's decision. [Dkt. #20, #38]. He sought, and was granted, five extensions of time, totaling an additional thirteen months. The excuses in this case, like those in so many of his other cases, varied, but they always involved the same attempted justifications that he has been using in case after case, with judge after judge, year after year. There was the claimed illness of his wife, who he said also was his secretary [Dkt. #21]; vacation [Dkt. #25]; power outages [Dkt. #29]; his own illness [Dkt. #31]; an accumulated backlog of work [Dkt. #34], etc. A review of Mr. Rose's cases reveals that these are the standard excuses used always. And yet, the record in this and other cases reveals that he continues to take on work and clients hopelessly inconsistent with his claimed incapacity to perform; he does not cease taking vacations; does not either replace his "secretary" or bring on someone to aid her; and despite clear and unambiguous ethical requirements, he does not bring on either other competent lawyers to help him or send cases out to others so that they may be properly and expeditiously handled.

Not amusingly, counsel labeled his third, fourth, and fifth motions for extension of time as his third motion for an extension of time, as though mislabeling would successfully deceive. *Rebirth Christian Academy Day Care, Inc. v. Brizzi*, 835 F.3d 742 (7th Cir. 2016). It did not. A litigant cannot use phrases and descriptions any way he pleases, and certainly not to fool the court. *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co*., 2011 WL 6382203, 2 (7th Cir. 2011).

And, in each case, Mr. Rose filed his motion for an extension of time well after the brief had been due, thereby in effect knowingly creating a situation in which he could obtain an extension by default. This is an all too common practice that courts generally do not tolerate once, let alone repeatedly, especially when the excuses are almost always the same and could have been remedied

and avoided. *See* page 5, n.1. *See e.g., Connecticut Gen. Life Ins. Co. v. Chicago Title & Trust Co.*, 690 F.2d 115, 115 (7th Cir. 1982)(Posner, J.); *Hare v. Comcast Cable Commc'ns Mgmt., LLC*, 564 F. App'x 23, 24 (4th Cir. 2014); *In re Energy Res. Co., Inc.*, 82 B.R. 172, 173 (D. Mass. 1987); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *7 (N.D. Ill. 2016).

Coming from a small firm I am not unsympathetic to claims by an attorney that make timely performance difficult. But, Mr. Rose continuously has used the excuse of the size of his practice as a basis for year after year flouting the rules by which all other lawyers have to live. There aren't special rules and special deadlines for sole practitioners. *See Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006). "[N]eglect due to a busy schedule is not excusable," and there is a "limit to the quantity of cases a sole practitioner can professionally handle by himself at any one point in time." *Id. See also G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *8 (N.D. Ill. 2016). The Rules have equal application to sole practitioners. *Netsphere, Inc. v. Baron*, 2013 WL 12128675, at *2 (N.D. Tex. 2013); *Davis v. Catholic Univ. of Am.*, 1999 WL 813663, at *5 (D.D.C. 1999); *Bello v. Bank of Am. Corp.*, 320 F. Supp. 2d 341, 348 (D. Md. 2004).[2]

There comes a point where certain excuses cannot be accepted as a justification for an attorney's behavior – especially when those excuses are repeated over a long period of years, no attempt is made to mitigate the situation, and no meaningful curative action is taken. *Cf. Harrington*,

---

[2] In an Order entered a year ago, another judge of this court lamented:

"Moreover, the Court is troubled by Mr. Rose using his status as a sole practitioner [sic] as an excuse. The comments to Rule 1.3 of the Illinois Rules of Professional Conduct state that "[a] lawyer's work load must be controlled so that each matter can be handled competently," and that "[p]erhaps no professional shortcoming is more widely resented than procrastination." If Mr. Rose finds that his status as a sole practicioner [sic] is preventing him from adequately handling his case load, this Court believe it is incumbent on him to either hire an associate, turn down cases he does not have the ability to litigate diligently, or risk committing ethical violations."

433 F.3d at 548. "Common sense dictates that there is a limit to the quantity of cases a sole practitioner can professionally handle by himself at any one point in time. Although [counsel] expressed at oral argument that he had done the best he could in this case, he appears to have exceeded that limit here." *Id.*

The excuses offered in this case are the same or very similar to the ones Mr. Rose continually advances and which he has been told continually he cannot rely on. Despite being told that he must do something his situation, the problems continue to persist and to mount. Indeed, we know of no lawyer who has been accorded as much leeway and courtesies as has Mr. Rose. All to no avail, despite warnings and pleas and threats. *See, e.g.,* the Orders in *Filipos v. Colvin*, 15 C 7719 [Dkt. #21] (rule to show cause why Mr. Rose should not be held in civil contempt and sanctioned for failure to follow court order); *Goznikar v. Colvin*, 11 C 7339 [Dkt. #35]; *Mosteller v. Astrue*, 11 C 1640 [Dkt. #41]. These are but a handful of the Orders that have been issued by magistrate judges of this court in Social Security cases. *See, also., Ackerman v. Astrue*, No. 11 C 8985; *Kelly v. Astrue*, No. 12 C 5580; *Gates v. Astrue*, No. 12 C 458; *LaGrand v. Astrue*, No. 12 C 6264. In each of the representative cases we have discussed, Mr. Rose had basically the same excuses for his acts and omissions as he raises here. And in each, his reasons for non or flawed performance have been the same.

In hindsight, granting Mr. Rose's repeated requests for extensions in this case seems ill-advised. But I am generally disinclined to deny motions for extension in Social Security disability cases, even when excuses mount and seem flimsy, because harm may befall the client, as opposed to counsel. But a line has been crossed in this case – if it has not been crossed long ago – and granting counsel's extremely late fee petition will not benefit his client. It will only benefit and

further encourage him further in his irresponsible ways.

While counsel was allegedly moving his office, or as seems more likely going by his experience, and ignoring a notice – the Commissioner was obligated to withhold $24,501.50– 25% of plaintiff's past-due benefits – to pay counsel. A portion of that went to the attorney who represented plaintiff in the administrative proceedings on remand, leaving $18,501.50. Counsel has already received an award of fees in the amount of $7500 under EAJA [Dkt. #55], and that amount must be reimbursed to the client in the event of an award under 42 USC §406(b). Plaintiff long since should have had that $7500. While the court originally had in mind a formula by which plaintiff would receive an interest payment out of the amount due counsel in an attempt to make her whole despite counsel's lengthy delay – and appreciates the Commissioner's calculations along those lines – further consideration and the misrepresentations of counsel now point to a different result.

What's past is all too often prologue. What has occurred here is not an isolated instance. It reflects a long pattern of disregard of responsibilities to clients and the court that goes back years. *See, e.g., Morgan v. Colvin*, 2015 WL 5116961, at *1 n. 2 (N.D. Ill. Aug. 28, 2015)("At a certain point, even the most tolerant court must say "enough." Mr. Rose is advised once again that all parties are expected to follow the ordinary rules of litigation unless they seek leave to proceed otherwise. They are not at liberty to fashion their own briefing schedule. Enough, Mr. Rose. Enough."); *Steffen v. Colvin*, 2013 WL 2285788, at *1 (N.D. Ill. May 23, 2013)(numerous extensions of time); *Amey v. Astrue*, 2012 WL 366522, at *2 (N.D. Ill. Feb. 2, 2012)("Plaintiff was given seven extensions of time to file this motion, which she submitted nearly two-and-a-half years after her initial filing."); *Paar v. Astrue*, 2012 WL 123596, at *2 (N.D. Ill. Jan. 17, 2012)("After receiving six extensions of time in which to file his motion, [plaintiff] eventually submitted the instant motion on February 2

7

. . . .").

Perhaps there have truly been illnesses that are never resolved, vacations that prevent compliance with court orders and schedules, or power outages; perhaps not or not nearly with the claimed frequency (as is more likely). But, as the Seventh Circuit pointed out in *Harrington* and other courts have made clear, there comes a time when it is irresponsible to take on additional work, when the work and the clients cannot be effectively and timely served. See also, *G & G Closed Circuit Events*, 2016 WL 3551634, at *8. That time came years ago for Mr. Rose. Delaying resolution of disability benefits cases by months and years begins to verge on cruelty. It is certainly contrary to the clients' best interest, to their legitimate expectations and to the transcendent public interest in the prompt resolution of legal disputes. *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990). *See also Weingarten Realty Investors v. Miller,* 661 F.3d 904, 913 (5th Cir.2011); *Gray v. Schaub,* 1999 WL 313743, *2 (7th Cir.1999).

The Seventh Circuit has held that a §406(b) petition for fees must be filed in a reasonable time. *Smith v. Bowen*, 815 F.2d 1152, 1156 (7th Cir. 1987). Under the Local Rules, a fee petition must be filed no later than 91 days after the judgment or settlement upon which it is based. L.R.N.D.Ill. 54.3(b). Counsel filed his petition in March 2017, two years and four months after he likely received the November 2014 notice of the resolution of the administrative proceedings in his client's case. Even if counsel's excuse of moving his office were credited, despite all the evidence undermining it, he admitted he received notice in August 2016 and did nothing for seven months. Whether the tally is 840 days or 210 days, it is well over 91 days and well past a reasonable time. *See Walker v. Astrue*, 593 F.3d 274, 280 (3rd Cir. 2010)(once counsel receives notice of award issued by the Commissioner, they must file a §406(b) petition for fees within fourteen days pursuant

8

to Fed.R.Civ.P. 54(d)(2)(B)); *Bergen v. Taylor*, 454 F.3d at 1277 ("... Fed.R.Civ.P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Pierce v. Barnhart,* 440 F.3d at 663 (applying Rule 54(d)(2) to a § 406(b) claim). This is especially so when the delay is compounded by misrepresentations to the court. To continue to turn a blind eye towards Mr. Rose's with his long history of delay and disregard for court-ordered deadlines serves no legitimate purpose and would encourage such conduct to the detriment of future clients – and the courts. The petition for fees is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/12/17